**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| SIERRA CLUB, et al. |
| Plaintiffs, |
| v. |
| ENVIRONMENTAL PROTECTION AGENCY, et al. |
| Defendants. |

Civil Action No. 25-cv-1112-RC

**DECLARATION OF JENNIFER DUGGAN**

I, Jennifer Duggan, declare and state as follows:

1.      I am the Executive Director of the Environmental Integrity Project (EIP). I have worked for EIP for approximately ten years.

2.      EIP is a non-profit, non-partisan organization dedicated to ensuring the effective enforcement of state and federal environmental laws to protect public health and the environment through a combination of legal advocacy, research, and data analysis. EIP's main office is located at 888 17th Street NW, Suite 810, Washington, D.C., 20006.

3.      EIP's mission is to protect public health and our natural resources by holding polluters and government agencies accountable under the law, advocating for tough but fair environmental standards, and empowering communities fighting for clean air and clean water. To advance this mission, among other things, EIP (1) conducts research and data analysis that is shared with the public that illustrates how the failure to enforce or implement environmental laws increases pollution and harms public health; (2) engages in legal advocacy to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with

1

environmental laws; and (3) provides legal and technical resources to organizations and communities that help them obtain the protections of environmental laws.

4. Since the organization was founded, EIP has invested substantial time and effort documenting how air and water pollution from industrial sources threatens human health and the environment, including in low-income communities, communities of color, and other vulnerable populations that may have higher pollution burdens and health risks. EIP has a strong organizational interest in ensuring the accuracy of the data it relies upon for its public education activities, legal and administrative advocacy efforts, and the resources it provides for organizations and communities.

5. The United States Environmental Protection Agency's (EPA) Environmental Justice Screening Tool (EJScreen) and the White House Committee on Environmental Quality's (CEQ) Climate & Economic Justice Screening Tool (CEJST) are essential to EIP's work.

6. I am aware that EJScreen is no longer available on EPA's website as of February 5, 2025, and that CEJST is no longer available on CEQ's website as of January 22, 2025.

7. EJScreen and CEJST enabled EIP to characterize the demographics and risk indicators of communities surrounding the industrial sources of pollution that are the focus of EIP's work, and to reveal any existing disparities based on regularly updated, standardized, and authoritative information.

8. Before EJScreen was removed from the EPA's website, EIP used EJScreen weekly to conduct research and prepare public reports, interactive maps, legal filings, and other materials that educate the public and decision-makers about the impacts of industrial pollution on communities.

9.      EJScreen provided a standardized, authoritative method to estimate facility-specific demographic indicators, including the percent of a population near a facility (1) for which the household income is less than or equal to twice the federal poverty level ("low income" indicator); (2) who identify their racial status as a race other than white alone and/or identify their ethnicity as Hispanic or Latino ("people of color" indicator); (3) are over 64 years old; or (4) are under 5 years old. EJScreen also included a cancer prevalence indicator. In addition, EJScreen enabled EIP to synthesize information from other federal datasets, including data about air emissions, wastewater discharges, and traffic proximity.

10.     EJScreen's Application Program Interface (API) allowed EIP to easily and routinely collect facility-specific demographic and other data using computer code on a scale at which EIP does not have the resources to compile manually. The EJScreen API tool was removed from EPA's website at the same time as EJScreen.

11.     EIP invests substantial time and effort to develop and release reports that document, and inform the public about, how air and water pollution from industrial facilities threatens human health and the environment. EIP's reports consistently incorporate information from EJScreen.

12.     For example, EIP relied on EJScreen in a July 2024 report on pollution from petroleum coke (or "petcoke") facilities in order to identify and report on environmental burdens and vulnerable populations living near these facilities. In that report, EIP found "35 percent of residents living within three miles of all the calcining facilities live in poverty and 45 percent are people of color; nine of the facilities are located in areas considered disadvantaged."[1]

---

[1]    The Long Shadow of Oil Refinery Waste, at 17 (July 25, 2024), https://environmentalintegrity.org/wp-content/uploads/2024/08/EIPReport_TheLongShadowOfOilRefineryWaste_8.2.update.pdf.

13.    Other examples of EIP reports that directly rely on EJScreen include: a March 2024 report on harmful air pollution from 50 new and expanded plastics plants across the United States, which found that, of more than 591,000 people who live within three miles these plants, 66 percent are people of color;[2] and a January 2023 report explaining that "[f]orty-four percent (36 of 81) of refineries that released pollution to waterways in 2021 are located in communities where the majority of residents are people of color or are considered low-income."[3]

14.    EIP also published a report and interactive website in November 2023, detailing how communities of color are disproportionately impacted by high ozone levels detected by air monitors in Houston, Texas.[4] The report's analysis relies on demographic information from EJScreen.

15.    EIP routinely uses the information in its reports to help ensure that industrial facilities comply with state and federal environmental laws, and to advocate for improvements to existing laws to protect human health and the environment.

---

[2] Feeding the Plastics Industrial Complex (Mar. 14, 2024), https://environmentalintegrity.org/wp-content/uploads/2024/03/EIP_Report_FeedingThePlasticsIndustrialComplex-1.pdf.

[3] Oil's Unchecked Outfalls: Water Pollution from Refineries and EPA's Failure to Enforce the Clean Water Act (Jan. 26, 2023): https://environmentalintegrity.org/wp-content/uploads/2023/01/Oils-Unchecked-Outfalls-03.06.2023.pdf.

[4] Environmental Integrity Project, "Increase in Houston Ozone Violations Hits Communities of Color Hardest" (Nov. 30, 2023), https://environmentalintegrity.org/wp-content/uploads/2023/11/EIP_Report_HoustonOzone_Final.pdf ("More than 40 percent of the people living in neighborhoods that surround seven of the eleven monitoring locations with the highest 2021–2023 ozone levels qualify as low-income, according to EPA's EJScreen, which is significantly more than the statewide average."); Environmental Integrity Project, "Ozone Pollution in Hoston" (Nov. 30, 2023), https://storymaps.arcgis.com/stories/52b01857399d4b86a1bb5ab0a5532508 (relying on EJScreen demographic data to conclude that "people of color and low-income households are more likely to be exposed to ozone concentrations that are higher, more persistent, and less likely to have improved since 2008").

16.     EIP also published and maintains an interactive map of existing and proposed carbon dioxide (CO2) pipelines that incorporates EJScreen's demographic information.[5] EIP relied on EPA's API tool to display census tract data from EJScreen. Since EPA removed EJScreen and the API tool, EIP's map no longer includes census tract data. Replacing that information would require EIP to access datasets with the same information, to upload those datasets, and to pay additional money for online storage of the datasets.

17.     EIP incorporated information from CEJST for EIP's report on petcoke facilities and the interactive map of existing and proposed CO2 pipelines.[6] In addition, EIP directly relied on CEJST for a September 2023, report on pollution from aluminum manufacturing facilities, in which EIP found that "residents living near U.S. smelters and other aluminum-related facilities are either part of or very close to areas defined as 'disadvantaged.'"[7]

18.     EIP created and maintains Oil & Gas Watch (oilandgaswatch.org), a free, public inventory that tracks the rapid expansion of oil, gas, and petrochemical infrastructure throughout the United States and alerts the public about opportunities to submit public comments. Oil & Gas Watch monitors the construction status of proposed projects so the public can stay informed about

---

[5]     Environmental Integrity Project, *Existing and Proposed CO2 Pipelines*, https://experience.arcgis.com/experience/ab732e88369f4ffa87d662caa7e79fd5/.

[6] Environmental Integrity Project, "The Long Shadow of Oil Refinery Waste" at 17 (July 25, 2024), https://environmentalintegrity.org/wp-content/uploads/2024/08/EIPReport_TheLongShadowOfOilRefineryWaste_8.2.update.pdf; Existing and Proposed CO2 Pipelines, https://environmentalintegrity.org/carboncaptureuseandstorage/ ("This tool also incorporates data from EPA's Environmental Justice Screening Tool (EJScreen) and the Climate and Economic Justice Screening Tool (CEJST)").

[7] Environmental Integrity Project, "The Aluminum Paradox" at 16, 45 (Sept. 27, 2023) https://environmentalintegrity.org/wp-content/uploads/2023/09/The-Aluminum-Paradox-Report-Final-09.27.23.pdf ("The assessment of communities near aluminum production facilities discussed in this report . . . is based on the Climate and Economic Justice Screening Tool (CEJST) developed by the U.S. Council on Environmental Quality, which provides an assessment of several environmental and socioeconomic conditions at the census tract level.").

major oil and gas developments being proposed in their communities. EIP's Oil & Gas Watch tracks key environmental approvals companies must obtain before starting construction or operations and provides the public with access to thousands of government records and permits obtained by EIP. This information provides a glimpse into how new and expanding facilities in these pollution-heavy industries could impact the environment and public health.

19.    EIP developed a computer code that allows the Oil & Gas Watch website to automatically monitor and retrieve demographic and environmental burden data from EJScreen every weekday. For each new or expanded facility that EIP added to Oil & Gas Watch, it used this code and EJScreen's API tool to seamlessly collect and publish demographic and environmental burden data at a scale and pace that EIP is not capable of achieving manually.

20.    EIP directly relies on EJScreen to collect and display facility-specific demographic and environmental burden data for over 1,000 facilities on Oil & Gas Watch. Among other things, EIP uses the information in EJScreen to inform the public about how oil, gas, and petrochemical facilities often disproportionately impact low-income communities and people of color.

21.    One important purpose of Oil & Gas Watch, for example, is to enable community organizers and engaged residents to identify and better understand disproportionate impacts of industrial pollution in their own neighborhoods and provide them with information about proposed environmental permits and opportunities for public participation. For instance, Oil & Gas Watch uses EJScreen data to communicate to the public that a proposed liquefied natural gas export terminal in Brownsville, Texas is estimated to impact a population within a 3-mile radius that is 96% people of color, 82% low income, and 11% under 5 years old.[8]

---

[8] Oil & Gas Watch, *Annova LNG Brownsville*, https://oilandgaswatch.org/facility/750. EIP used EJScreen to publish this information on Oil & Gas Watch before EPA removed EJScreen and the API tool from EPA's website.

22.     EIP's Center for Applied Environmental Science (CAES) helps ensure that local communities and environmental advocates have access to high-quality science and engineering expertise. By providing these technical resources, which is a critical element in permitting and siting decisions, legal challenges, and rulemaking efforts, EIP supports impacted individuals and communities who seek to influence environmental decisions that affect their health and quality of life.

23.     EIP uses EJScreen and CEJST several times a month to evaluate the demographic, risk characteristics, and other vulnerabilities of communities where CAES provides technical assistance. It takes that demographic and environmental burden information into account when making decisions about how to best fund these expert relationships and provide technical support to communities, in furtherance of CAES's goal of supporting communities most affected by pollution and historically left out of environmental decision-making, including communities of color and working-class communities.

24.     In some cases, EIP also relies on EJScreen and CEJST for quick, reliable identification of certain risk levels, such as proximity to Superfund sites, to evaluate the best way to provide technical assistance through CAES. For example, if a community organization approaches EIP with concerns about soil contamination from a certain source, EIP can use EJScreen to evaluate whether there are other sources nearby that may also be contributing to the soil contaminants, and whether it should try to account for those potential sources in formulating the scope of investigative work.

25.     EIP also provides technical assistance through CAES by establishing community-level air quality monitoring networks. EIP evaluates candidate sites for air quality monitoring using EJScreen's demographic information and air quality indices. EJScreen allows CAES to better

understand whether a location has relatively high levels of air pollution (for example, particulate matter or ozone), and whether the local community is vulnerable to poor air quality for reasons having to do with age distribution and income.

26.     EIP represents and partners in a variety of legal and administrative proceedings, on a pro bono basis, with organizations whose organizational and members' health, recreational, aesthetic and other environmental interests are harmed by industrial pollution. Among other things, EIP advocates on behalf of these organizations by reviewing permits required under the Clean Air Act and Clean Water Act and challenging permits that do not protect public health or the environment, and by bringing enforcement actions when facilities violate environmental laws. EIP also participates in rulemaking and other regulatory proceedings on behalf of, or in partnership, with local, state, and national organizations.

27.     EIP frequently takes the demographic and environmental burden information in EJScreen into account when making decisions about how best to deploy EIP's limited legal resources. For example, EIP and our partners filed comments during the public comment period on EPA's proposed decisions about whether to update technology-based water pollution limits for industrial facilities under the Clean Water Act, and later sought judicial review of EPA's failure to update these limits for seven regulated industries. *See Waterkeeper v. EPA*, 23-636 (9th Cir., Apr. 11, 2023) (Pet. for Rev.). EIP and our partners relied on EJScreen to identify and prioritize for public comment and judicial review those industrial categories with outdated pollution limits that discharge wastewater in communities with high percentages of low-income people and people of color compared to the national average. EIP has asked the U.S. Court of Appeals for the Ninth Circuit to take judicial notice of data from EJScreen that shows 65% of petroleum refineries, 64% of plastics moldings and forming facilities, 63% of organic chemical and plastic facilities, 67% of

inorganic chemical manufacturers, 66% of pesticides manufacturers, and 55% of fertilizer manufacturers are located within one mile of areas at the 80th or higher national percentile for one or more of EPA's environmental justice indices.[9]

28.    The removal of EJScreen and CEJST greatly hinders EIP's ability to document how industrial air and water pollution threaten human health and the environment, particularly in communities with high environmental burdens and vulnerable populations. It also harms EIP's ability to ensure the accuracy of the data upon which it relies to inform its public education activities and legal and administrative advocacy efforts.

29.    Without the standardized, authoritative demographic and environmental burden data provided by EJScreen and CEJST, EIP's ability to disseminate accurate information about the public health and environmental impacts of industrial pollution is greatly reduced. In addition, the inability to use these tools hampers EIP's ability to make organizational decisions about where and how to deploy limited technical and legal resources.

30.    EIP does not have access to any alternative to EJScreen and CEJST that reflects the same level of standardization, reliability, precision, and functionality, and which does not present time-consuming technical challenges. EIP does not have access to any alternative to EJScreen and CEJST that offers a consistent, reliable methodology used by partner organizations and state and federal agencies.

31.    A significant investment of time and resources would be required for EIP to collect the information available on EJScreen and CEJST from other sources and analyze it, and doing so would present technical and data management challenges. For example, without the ability to bulk-

---

[9] EIP Opening Brief at 16, *Waterkeeper Alliance v. U.S.E.P.A.*, 23-636 (9th Circuit, Sept. 13, 2024).

download data through EJScreen's API, demographic data must be directly estimated from U.S. Census data. This process is time and resource intensive and, in any event, would not provide EIP with the authoritative, standardized methodology that underlies EJScreen and CEJST.

32.    The lack of accurate and reliable information on demographic and other indicators from EJScreen and CEJST reduces EIP's ability to disseminate—to the general public, impacted communities, organizations, decisionmakers, and the media—accurate information about the impacts of industrial air and water pollution on human health and the environment.

33.    Removal of EJScreen and CEJST has already delayed the regular collection, dissemination, and evaluation of this information. For example, EIP is not able to provide demographic indicator information for numerous facilities added to Oil & Gas Watch since EJScreen became unavailable, which EIP would typically update on a daily basis using EJScreen's API. Without access to EPA's EJScreen and the API tool, EIP is not capable of manually collecting, disseminating and evaluating the information at the same pace and scale. EIP plans to continue adding new oil, gas, and petrochemical projects to Oil & Gas Watch. But, without access to EJScreen, the number of facilities without demographic indicator information will continue to grow.

34.    EIP has also not been able to appropriately consider the demographic and environmental burden information in EJScreen and CEJST when making decisions about how to best fund expert relationships through CAES or otherwise provide technical support to communities.

35.    If EJScreen and CEJST are not restored, EIP will be required to invest considerably more of its limited time, money, and effort to, among other things:

a. Pursue other means to individually gather demographic and environmental burden information and establish a standardized and authoritative method to analyze, calculate, and evaluate demographic data at scale for reports, Oil & Gas Watch, and legal and administrative advocacy;

b. Consider demographic and environmental burden information as part of funding and other technical support decisions through CAES; and

c. Evaluate demographic and environmental burden information for consideration in decisions about how to deploy limited legal resources.

36.    EIP has already had to invest additional resources to gather and analyze data without access to EJScreen. EIP had to develop and run a new computer code over the course of several hours to gather demographic data for over 500 industrial facilities from EPA's Enforcement Compliance History Online (ECHO) website to create an interactive map of facilities that EPA invited to seek an exemption from certain Clean Air Act requirements. EIP then had to spend additional time reconciling inconsistencies in ECHO's data. EIP could have gathered and analyzed this data in under an hour using EJScreen.

37.    If a court required EPA to restore EJScreen and CEJST, EIP would no longer need to expend its limited resources on efforts to replicate the work EPA and CEQ already completed when they developed EJScreen and CEJST.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on May 2, 2025.

_____
Jennifer Duggan
Executive Director
Environmental Integrity Project